**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MIDFIRST BANK, a federally chartered savings association, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 3:26-cv-00567-DWD |
| SHAWNEE OIL COMPANY LLC, a Delaware limited liability company, SHAWNEE EXPLORATION PARTNERS LLC, a Delaware limited liability company, SHAWNEE EXPLORATION PARTNERS 2 LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) | (Removed from the Circuit Court of the Second Judicial Circuit, White County, Illinois, No. 2026MR8) |
| Defendants. | ) ) | |

## CONSENT ORDER APPOINTING RECEIVER

THIS CAUSE having come before the Court on Plaintiff MidFirst Bank ("MidFirst" or "Plaintiff"), Shawnee Oil Company LLC ("Borrower"), Shawnee Exploration Partners LLC ("Shawnee Exploration") and Shawnee Exploration Partners 2 LLC ("Shawnee Exploration 2," and together with Borrower and Shawnee Exploration, the "Defendants") *Joint Motion for Appointment of Receiver Over All Defendants by Consent*, dated July __, 2026 ("Joint Motion"); the Court, being fully advised as to the premises following briefing of MidFirst's *Motion for Appointment of Receiver Over All Defendants* ([Doc. 27], "Motion"[1]) and an evidentiary hearing held on July 9, 2026, finding good cause therefor and further finding that all parties have due and adequate notice and are in agreement about the relief provided herein, it is, pursuant to 28 U.S.C. § 754, Federal Rule of Civil Procedure 66 and the Court's equitable and inherent authority, hereby **ORDERED** that the Joint Motion is **GRANTED** as provided herein.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion [Doc. 27].

1.    **Appointment.** Pursuant to 28 U.S.C. § 754, Federal Rule of Civil Procedure 66 and its equitable powers, the Court hereby **APPOINTS**

**W. Marc Schwartz, CPA, CFF, CFE, CRC**

as federal equity receiver ("Receiver") of and over Borrower, Shawnee Exploration, and Shawnee Exploration 2, and all of their respective assets and properties (collectively, the "Receivership Assets").

2.    **Receivership Assets.** The Receivership Assets include, without limitation: (a) all property of Defendants, including all of Defendants' receivables, equipment, leases, finance agreements, equipment loans, accounts, chattel paper, inventory, goods, fixtures, investment property, deposit accounts, letter-of-credit rights, commercial tort claims, personal property, real property, leasehold interests and all proceeds of the foregoing; (b) all contract rights of Defendants; (c) all equity interests in Defendants; (d) all legal and equitable claims, rights and causes of action of Defendants; (e) all banking, brokerage and depository accounts of Defendants; (f) all electronic currency accounts of Defendants; (g) all Internet payment processor accounts of Defendants; (h) all of Defendants' real property interests; (i) all money, income, earnings and revenue of Defendants that have arisen or hereafter arise from operation or disposition of the Receivership Assets; and (j) any and all other assets of Defendants necessary to operate Defendants' business, including, without limitation, any and all seismic studies, seismic surveys or related models and reports.

3.    **Exclusive Jurisdiction.** The Receivership Assets are in *custodia legis*, and, as such, subject to the exclusive *in rem* jurisdiction of this Court, immune from attachment or other legal process, and subject entirely to control by Receiver as this Court's appointee. The Court shall retain jurisdiction and supervision of all matters concerning the Receiver, the receivership

created hereby and the Receivership Assets. Any and all actions that affect Receiver or the Receivership Assets shall be brought in this Court. All persons are hereby enjoined from taking any action to collect a debt, including, without limitation, obtaining possession of, exercising control over, or enforcing a judgment against the Receivership Assets, enforcing a lien against the Receivership Assets, or commencing or continuing to prosecute any action against the Receivership Assets outside of this action.

4.      **Powers.** Except as otherwise provided herein, the Receiver is hereby vested with full powers of a federal equity receiver to the maximum extent permissible by 28 U.S.C. § 754, Federal Rule of Civil Procedure 66 and the Court's equitable powers. Without limiting the generality of the foregoing, the Receiver is empowered to:

(a)      Take exclusive possession of and control over the Receivership Assets;

(b)      Operate the business and financial affairs of Defendants and, subject to the Approved Budgets (defined herein), pay from the proceeds of the Receivership Assets all reasonable costs and expenses as shall be incurred by Receiver in the ordinary course of business;

(c)      Be, and be deemed to be, the sole and exclusive manager and sole and exclusive member of each Defendant, together with all the powers conferred and duties imposed on the manager and members of Defendants by the applicable corporate governance documents and applicable state law;

(d)      Have the sole and exclusive authority to cause Borrower, Shawnee Exploration and/or Shawnee Exploration 2 to commence a case under 11 U.S.C. §§ 101 *et seq.*

(e)      Perform under, or reject and terminate, Defendants' existing executory contracts and unexpired leases;

3

(f)    Take possession or control of all existing bank accounts, cash and funds belonging to or for the benefit of Defendants in bank accounts associated with and/or used for the operation of the Receivership Assets (regardless of what time period), whether in the name of Defendants or their agents, and to open, transfer and change all such bank accounts into the name of the Receiver, if appropriate, or otherwise take such actions as are necessary to ensure such bank accounts are under the control of Receiver and ensure Defendants do not have access to such accounts without consultation with Receiver;

(g)    Provide all reporting required by the Loan Documents;

(h)    Employ such consultants, managers, brokers, marketing agents or other employees, agents, independent contractors or professionals as Receiver may in his discretion deem appropriate or desirable to implement and effectuate the rights and powers herein granted;

(i)    Upon Court approval, engage attorneys or other professionals in order to advise and assist Receiver in carrying out his duties and appearing in court or other proceedings on his behalf ("Professionals");

(j)    Collect the rents, accounts receivable, insurance claim proceeds, security deposits, proceeds, earnest money deposits and profits from the Receivership Assets, if any, from any time period whether historical, current or prospective, and receive any such assets presently in the possession of Defendants and/or their agents;

(k)    Have superintendence over Defendants' employees, and hire, fire, select and retain employees of Defendants as Receiver deems reasonable or necessary;

(l)    Upon Court approval and consent of Plaintiff, market, sell and/or liquidate all or portions of the Receivership Assets free and clear of all liens, claims and encumbrances;

4

(m)     Upon Court approval and consent of Plaintiff, conduct an orderly wind down of Defendants' business operations;

(n)     Issue and serve discovery and subpoenas on persons or entities for the production of documents or for oral examination relating to the acts, conduct, property, assets, liabilities and financial condition of Defendants and other entities that are now or may later be placed in receivership, or to any matter that affects the administration of the receivership estate, such that the Receiver's investigatory powers are coextensive with the authority that Federal Rule of Bankruptcy Procedure 2004(b) grants to a bankruptcy trustee;

(o)     In accordance with section 9 below, borrow monies from Plaintiff or use Plaintiff's cash collateral, both secured by a senior and paramount lien upon the Receivership Assets for the purposes of performing Receiver's obligations under this or other orders of this Court, and preserving or enhancing the value of the Receivership Assets, in each case on terms and conditions agreed upon by Plaintiff;

(p)     Investigate the financial affairs of Defendants;

(q)     Commence civil actions on behalf of Borrower, Shawnee Exploration and/or Shawnee Exploration 2; *provided, however*, the Receiver shall have no power to commence a civil action against Will Parks, John Ross, James Reuben Burton, Jr., Amy Short, Daniella Lucas, Emerge Solar LLC, Emergent Energy PCC Limited, Shawnee Exploration Manager LLC or Marceau Schlumberger without first obtaining leave of this Court to do so; and

(r)     Apply to this Court for instructions or modifications of this Order.

5.     **Specific Prohibitions.** Defendants and their respective partners, representatives, officers, managers, directors, members, shareholders, affiliates, trustees, trust beneficiaries or agents (collectively, "Defendant Agents") shall in all respects comply with this Order, and are

5

hereby enjoined and restrained from impeding or interfering in any manner with the exercise by Receiver of his rights, powers and duties hereunder. Defendants and Defendants Agents shall not:

(a)    Have possession or control of, or any right to, the Receivership Assets or money or other proceeds derived from the Receivership Assets;

(b)    Enter into any lease, contract or agreement of any kind or character relating to, and shall not grant any lien upon or security interest in, the Receivership Assets;

(c)    Communicate in any manner with Defendants' employees, unless authorized by the Receiver,

(d)    Modify, terminate or cause to be modified or terminated any license, permit, lease, easement, contract or agreement, if any, relating to the Receivership Assets;

(e)    Collect any revenues, receivables, proceeds or other sums payable with respect to the Receivership Assets;

(f)    Remove or destroy any Receivership Assets from their current location whether constituting collateral of Plaintiff or otherwise

6.    **Turnover.** Any person or entity that (a) has possession, custody or control of the Receivership Assets or any portion thereof shall turn over such Receivership Assets to Receiver and/or (b) owes a debt to Defendants that is matured or payable on demand or on order shall pay such debt to or on the order of the Receiver. All such persons or entities are hereby enjoined and restrained from transferring any Receivership Assets to Defendants or paying to Defendants or their respective agents, officers, directors, employees or attorneys any such amounts, except with the Receiver's consent.

7. **Stay.** Except by leave of this Court, during the pendency of the receivership ordered herein, Defendants and all other persons and entities (except a governmental unit[2] enforcing its police, regulatory or criminal powers) be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, Defendants, any of their subsidiaries, affiliates, partnerships, assets, documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

(a) Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

(b) Accelerating the due date of any obligation or claimed obligation; filing, perfecting or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to Defendants that arose before the date of this Order against any claim against Defendants;

(c) Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

(d) Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the assets or documents subject to this

---

[2] As defined by 11 U.S.C. § 101(27).

receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Defendants.

8.      **Banking.** Defendants' deposit accounts (collectively, the "Deposit Accounts") and current cash management system at MidFirst Bank shall remain in place and Receiver shall deposit all funds from any other accounts, proceeds of receivables, all other cash collections and all other proceeds of Receivership Assets into such Deposit Accounts. Receiver is authorized to utilize Defendants' cash management system in accordance with and subject to the terms of this Order. All deposit account agreements, blocked account agreements and similar bank account agreements that were in place prior to the entry of this Order shall remain in effect and are hereby ratified and reaffirmed. Receiver is authorized, and Defendants are directed, to take necessary or desirable actions to effectuate this arrangement.

9.      **Funding.** So long as the fees and expenses do not exceed the aggregate amount set forth in the Approved Budget (as defined below) (unless otherwise approved in writing by Plaintiff in its sole discretion), Plaintiff shall be responsible for payment for services rendered and reimbursement of expenses actually incurred by Receiver and its Professionals, including, without limitation, all expenses and costs related to operating and overseeing the Receivership Assets, to the extent the assets or proceeds of the assets of Defendants are insufficient or unavailable to pay the same (the "Professional Payments"). Receiver may obtain financing for funding the operations of Defendants' businesses through protective advances from Plaintiff under the Loan Agreement and the other Loan Documents, which shall be evidenced by Receiver's Certificates issued by Receiver in favor of Plaintiff (the "Certificates"). All Certificates and Professional Payments shall constitute part of Defendants' obligations under the Loan Agreement and the other Loan Documents and shall be secured by automatically perfected,

first-priority liens on the Receivership Assets. Nothing contained in this Order obligates Plaintiff to make any advances to Receiver pursuant to Certificates or make any payments regarding Professional Payments in excess of the Approved Budget.

10.    **Budget Process.** Receiver shall perform his obligations hereunder and make disbursements in accordance with, and subject to, the terms of this Order and the Approved Budgets (as defined below). For each 13-week period during the continuation of the receivership, Receiver shall deliver to Plaintiff a detailed budget that reflects on a line-item basis for each covered week period the Receiver's good faith projection of cumulative cash receipts, disbursements and expenses necessary to operate Defendant's businesses, pay the expenses of and otherwise administer the receivership and preserve and protect the Receivership Assets (commencing with the calendar week in which the budget is delivered to Plaintiff), in form and detail acceptable to Plaintiff (an "Approved Budget"). The Receiver must submit the first proposed budget to Plaintiff within 7 days of entry of this Order. The Receiver and Plaintiff shall confer and submit a proposed further order regulating the details of the budget process.

11.    **Quarterly Reports.** Receiver shall file with the Court's electronic filing system a report of its activities at least every calendar quarter ("Quarterly Reports") that states, among other things: (a) all cash receipts of Defendants and their operations; (b) all payments and disbursements made by Receiver; (c) any receipts and disbursements of the Receivership Assets; (d) fees and expenses of the Receiver and, if not filed separately, a request for approval of payment of such fees and expenses; and (e) the updated weekly performance compared to the Approved Budget on both an aggregate basis and a line-item by line-item basis. Receiver's first Quarterly Report shall be filed on a date to be fixed by separate order, and shall cover the then-

current quarter. Objections to Quarterly Reports shall be filed on a date to be fixed by separate order, and a hearing on a Quarterly Report will be set if the Court deems it necessary.

12. **Compensation.** Receiver and all Professionals hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by Defendants. The Receiver and Plaintiff shall confer and submit a proposed further order regulating the details of the compensation process.

13. **Utilities and Vendors.** No utility or other vendor may terminate service or the provision of goods to the Receivership Assets as a result of the non-payment of pre-receivership obligations. Each utility company or entity providing service to Defendants shall forthwith transfer any deposits which it holds for the benefit of Defendants to the exclusive control of Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance to maintain or secure such service.

14. **Insurers.** No insurance company shall be permitted to terminate coverage or refuse coverage for the Receivership Assets based on prior unpaid premiums, claims history or because of the appointment of Receiver pursuant to this Order. In addition, no insurance company shall be allowed to put in place more stringent payment arrangements during the term of the receivership pursuant to this Order.

15. **No Impairment of Plaintiff.** Nothing in this Order shall impair Plaintiff's rights and remedies against any guarantor, indemnitors, or obligors of the obligations under the Loan Documents; provided that, for the avoidance of doubt, (a) Will Parks, John Ross, James Reuben Burton, Jr., Amy Short, Daniella Lucas, Emerge Solar LLC, Emergent Energy PCC Limited,

10

Shawnee Exploration Manager LLC or Marceau Schlumberger are not guarantors, indemnitors, or obligors under the Loan Documents and (b) Plaintiff cannot bring a civil action for breach of contract or breach of guaranty against Will Parks, John Ross, James Reuben Burton, Jr., Amy Short, Daniella Lucas, Emerge Solar LLC,Emergent Energy PCC Limited, Shawnee Exploration LLC or Marceau Schlumberger under the Loan Documents.

16.     **No Admission of Liability.** Borrower's, Shawnee Exploration's and Shawnee Exploration 2's consent to this Order is not an admission of liability and this Order cannot be construed as such. The Receiver, acting as an independent judicial officer that reports to the Court alone, may raise affirmative defenses against MidFirst's claims on Borrower's, Shawnee Exploration's and Shawnee Exploration 2's behalf. Receiver may further elect to bring counterclaims on Borrower's, Shawnee Exploration's and Shawnee Exploration 2's behalf against MidFirst.

17.     **Bond.** For good cause shown, the Court is of the opinion that Receiver ought to be appointed without bond.

18.     **Prior Motions.** In light of the relief provided by this Order, MidFirst's Motion [Doc. 27], as well as its receivership motion filed in state court [Doc. 1-3], are WITHDRAWN.

19.     **Effectiveness; Service.** This Order shall be effective immediately upon its entry and for all purposes. The Receiver shall serve notice of his appointment upon all known creditors of Defendants. Actual notice to such creditors may be accomplished by delivery of a copy of this Order through first-class mail, courier or hand delivery to their last-known address or, if not available, through facsimile, email or any other reasonable means of delivery.

11

20.     **Status Quo Order**: This Court entered a Status Quo Order (Doc. 40) on July 1, 2026, which was extended by further Order (Doc. 56) on July 24, 2026. Both the Status Quo Order and the Order extending the Status Quo Order are dissolved with the entry of this Order.

**So Ordered**

**Date: July 27, 2026**

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.07.27 15:38:04 -05'00'

David W. Dugan
United States District Judge

12